**REVISED**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-50508

_____


PEDRO CRUZ MUNIZ,

Petitioner-Appellant,

VERSUS

GARY L. JOHNSON,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
January 2, 1998


Before SMITH, BARKSDALE, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Pedro Muniz appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Finding no reversible error, we affirm and vacate the stay of execution.


I.

Muniz raped and murdered Janis Bickham in 1976.  Before doing so, he followed her down a city street and over a bridge.  When she reached the end of the bridge, Muniz grabbed her, dragged her down

a ravine, over a stream, and through a fence.  He then took her to an abandoned cabana, where he raped her and beat in her head with a log.  When he was finished, he buried her body in a pile of wood and fled.

Two days later, police arrested Muniz and charged him with murder.  He was taken before a magistrate, then placed in a local jail.

The next day, Officer William Shirley questioned Muniz; this interview ultimately led to Muniz's confession.  In his written statement, Muniz admitted to having the aggravated and nonconsensual sexual relations with Bickham that preceded her death.  Muniz gave the statement while in police custody after receiving his *Miranda* warnings.

During this interview, Shirley suggested at one point that Muniz might want to call a lawyer.  Muniz agreed, and Shirley picked up the telephone to place the call for Muniz.  When asked for his lawyer's number, Muniz indicated that he would contact the lawyer later.  Shirley then hung up the phone and continued the interview.[1]

II.

A.

At the pre-trial hearings concerning his motion to suppress

---

[1] There is confusion in the record about how many times Muniz invoked his right to counsel.  The state trial and appellate courts found that he did so only once.  We conclude that this finding is supported by the record.  *See infra* part IV.A.

the confession, Muniz testified that Shirley had coerced him into giving the confession. He claimed that Shirley had made him feel despondent, playing on his fears for his family; had promised him leniency in exchange for the confession; and had offered to help his family if he signed the statement.

Shirley testified that he told Muniz that sometimes when a defendant confesses, the state shows leniency. Shirley, however, denied that he guaranteed a reduced charge or sentence in exchange for Muniz's statement.

Shirley also stated that although he did offer to contact social service agencies for Muniz's family, he did not condition his offer on whether Muniz confessed. Shirley testified that he spoke with Muniz about religion and offered to get him a priest––an offer not conditioned on a confession. During the interview that led to the confession, Shirley showed Muniz photos of Bickham's body and of the crime scene.

The trial judge credited Shirley's testimony over Muniz's and admitted the confession into evidence. In 1986, a jury convicted Muniz of capital murder and sentenced him to death.[2]

B.

The Texas Court of Criminal Appeals affirmed, *see Muniz v.*

---

[2] Muniz originally was convicted and sentenced to death in 1977. This court issued a writ of habeas corpus because the trial court had improperly admitted psychiatric information obtained from Muniz without the benefit of *Miranda* warnings. *See Muniz v. Procunier*, 760 F.2d 588, 590 (5th Cir. 1985). The state retried Muniz in 1986. At the suppression hearing before trial, the trial judge reincorporated all of the testimony from the suppression hearing preceding the first trial and heard new testimony from the relevant actors.

*State*, 851 S.W.2d 238, 259 (Tex. Crim. App. 1993), whereupon Muniz filed a state habeas corpus petition, which was denied by the Texas Court of Criminal Appeals in 1994. Two months later, Muniz filed a federal habeas petition, which was denied in 1996.

                                    III.

We first must address the applicability to this case of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. After denying Muniz's habeas petition, the federal district court granted a Certificate of Probable Cause ("CPC"), allowing him to appeal. We remanded in light of our caselaw applying the AEDPA to similar cases. *See Muniz v. Johnson*, 114 F.3d 43, 45-46 (5th Cir. 1997). We instructed the district court to narrow the issues for appeal by issuing a Certificate of Appealability ("COA") under the new law. *See id.*

On remand, the district court did as we had instructed and issued a COA specifying the issues Muniz could appeal. Contemporaneously, however, the Supreme Court decided *Lindh v. Murphy*, 117 S. Ct. 2059 (1997), holding that the AEDPA is inapplicable to cases like Muniz's. *See Lindh*, 117 S. Ct. at 2063.

In light of *Lindh*, we erred in remanding this case for a COA. Instead, the district court was correct originally to have issued a CPC. Fortunately, however, under the law of this circuit, we construe the COA grant as a grant of a CPC. *See McBride v. Johnson*, 118 F.3d 432, 436 (5th Cir. 1997).

4

IV.

A.

Muniz claims that on multiple occasions during the interrogation that led to his confession, he invoked his right to counsel. He further argues that the state can offer only one instance of his voluntary re-initiation of the interrogation. Therefore, he maintains, we should find a *Miranda* violation, because the state is unable to disprove all of the instances in which he claims that he invoked his right to an attorney. The well-settled rule is that "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

At bottom, Muniz's argument is an attack on the trial court's factual finding that Muniz made only one request for a lawyer, rather than several.[3] State court factual findings are presumed correct under 28 U.S.C. § 2254(d)[4] unless one of the statutory exceptions is met. The exception at issue here is whether the

---

[3] Muniz does not contest the voluntariness of the re-initiation when he told Shirley that he would call his attorney at a later time. Rather, he rests the validity of his claim on the fact that he made several other requests for an attorney as to which the state cannot account for a voluntary re-initiation of the interview.

[4] We refer, throughout, to the former version of § 2254(d), applicable to pre-AEDPA cases.

5

state court's "factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d)(8). "[T]he burden shall rest on the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." *Id.* § 2254(d).

Muniz testified that he had made several requests for counsel; Shirley, the only other person in the room at the time, testified to the contrary. At the suppression hearing prior to the first trial, Shirley stated that Muniz asked for counsel "at one period." At that hearing, Shirley also testified, in response to a question by defense counsel, that "there were a couple of times [Muniz] asked to talk to an attorney," but at the suppression hearing before the second trial, Shirley clarified his former testimony, stating that there was only one request for an attorney and that, as he began to place the call to Muniz's lawyer, Muniz decided to continue the interview without counsel.

The record supports the state court's finding that Muniz made only one request for counsel.[5] Although Shirley equivocated at the first suppression hearing, his subsequent testimony provides enough evidence to support the trial judge's conclusion that Muniz requested counsel only once.[6] Moreover, there is reason to

---

[5] These findings of fact were dictated into the record by the trial judge and were affirmed and adopted by the Court of Criminal Appeals. *See Muniz*, 851 S.W.2d at 252.

[6] The trial judge, as fact finder, was in the best position to evaluate the credibility of witnesses, so the law defers to his judgment. *See* 28 U.S.C. § 2254(d). In this case, the ambiguity may have been the result of a confusing line of questioning from defense counsel. The transcript of the suppression hearing preceding the first trial is replete with puzzling questions by defense counsel that had the noticeable effect of eliciting perplexing answers from the police officers.

6

disbelieve Muniz's testimony given at the suppression hearings.[7]
Given the record, therefore, Muniz has not established "by convincing evidence that the factual determination by the State court was erroneous."  28 U.S.C. § 2254(d).

B.

Muniz challenges the voluntariness of his confession.  A confession is voluntary if it is "the product of a rational intellect and a free will."  *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (internal quotations omitted).  The defendant, therefore, must show that but for police coercion he would not have given the confession.  *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986).

"[T]he ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination."  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  Subsidiary factual questions, however, are entitled to a presumption of correctness:  "[S]ubsidiary questions, such as length and circumstances of the interrogation, the defendant's prior experience with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant.  The law is therefore clear that state-court findings on

---

[7] In other aspects of his testimony concerning the confession, Muniz's story had changed drastically in the interim between the 1977 suppression hearing and the suppression hearing before his retrial in 1986.  For instance, in the 1977 hearing, the defense concentrated on the fact that Shirley had used coercive influences on Muniz to get him to confess.  This coercion allegedly led Muniz to break a glass against his head.  In 1986, however, Muniz stated for the first time that *Shirley* had smashed the glass against Muniz's head and threatened to shoot him if he did not confess.

7

such matters are conclusive on the habeas court if fairly supported by the record . . . ."  *Id.* at 117.  Accordingly, using the presumptively correct factual findings of the state court, we reweigh *de novo* the voluntariness calculation.

"Whether the police engaged in the coercive tactics alleged by the defendant is a subsidiary fact; as such, the trial court's finding is entitled to deference on habeas review if it is supported in the record."  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) (citation omitted).  The record supports the trial court's factual findings that Shirley did not promise leniency in exchange for the confession.[8]  There is also sufficient evidence to support the finding that Shirley did not condition his offer to help Muniz's family seek social services, or his getting a priest for Muniz, on a confession.[9]

In our voluntariness calculation, therefore, we are left with Shirley's showing Muniz the murder scene pictures; Shirley's appeal to Muniz's religion; and Muniz's alleged fatigued physical and emotional condition at the time of the confession.  We cannot conclude that the totality of these factors overpowered Muniz's will or produced a confession that was not of his own free choice.

Muniz was fully informed of his *Miranda* warnings before he gave his statement.  The evidence supports the state court's

_____

[8] Shirley so testified at both suppression hearings.

[9] In addition, Muniz claims that he was deprived of a meal before he entered the interview in which he confessed.  There is no evidence in the record, however, that he ever requested food, nor does he offer an explanation why he decided not to make such a request.  Nothing in the record indicates that the officers conditioned Muniz's access to food and drink on his confessing.

8

finding that he understood what these warnings meant. Moreover, before he signed the statement, Muniz was asked by another officerSSone who was not in the room at the time the confession was writtenSSwhether the statement he gave was voluntary. Muniz stated that it was.

Muniz also argues that his fatigued physical and emotional condition at the time of the confession made him more susceptible to coercion. He argues that he was arrested late at night on December 22, 1976. Thereafter, he was taken to a magistrate and then taken to a holding cell in the early hours of December 23. He claims that at noon on December 23, Shirley began the interview that led to the confession.

Even assuming this sequence of events, there appears to have been ample time for Muniz to rest before the interview started. Moreover, there is nothing in the record to suggest that he complained to the officers about his fatigue; that he requested additional time to rest; or that the officers conditioned additional rest time on receiving his confession. These facts, taken together, do not suggest a coerced confession.

V.

Muniz avers that the prosecutor made improper closing arguments. Specifically, he alleges that the prosecutor deprived him of due process by disparaging his constitutional rights and by improperly vouching for the evidence. Muniz failed to object to the prosecutor's closing arguments at trial and did not raise the

issue on direct appeal in the state court or in his state habeas proceedings.

## A.

A federal habeas court may not consider a state prisoner's claim if the state court based its rejection of that claim on an independent and adequate state ground. *See Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "This doctrine ensures that federal courts give proper respect to state procedural rules." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750-51).

"[P]rocedural default does not bar consideration of a federal claim on either direct or habeas review unless the state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (plurality opinion) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). This method for determining whether the "independence requirement" is met, however, "assumes that a state court has had the opportunity to address a

10

claim that is later raised in a federal habeas proceeding.  It is simply inapplicable in a case such as this one, where the claim was never presented to the state courts."  *Id.* at 299 (citation omitted); *accord Coleman*, 501 U.S. at 735 n.*.[10]

The "adequacy" of a state procedural rule depends on whether it is "strictly or regularly followed" by the state courts. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) (citations omitted).  We make our adequacy determination by looking at how the state courts have applied the rule in a "vast majority of similar claims."  *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), *cert. denied*, 516 U.S. 1005 (1995).

### 1.

The Texas courts require a defendant to raise a contemporaneous objection to a prosecutor's improper closing arguments.  *See* TEX. R. APP. P. 52(a); *Penry v. State*, 903 S.W.2d 715, 760 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995).  The rationale for the contemporaneous objection rule is that it conserves judicial resources.  A contemporaneous objection allows the trial court to correct the error at the time it occurs, or to grant a new trial.

We have previously held the contemporaneous objection

---

[10] "[I]t is simply impossible to '[require] a state court to be explicit in its reliance on a procedural default,' where a claim raised on federal habeas has never been presented to the state courts at all.  In such a context, federal courts quite properly look to, and apply, state procedural default rules in making the congressionally mandated determination whether adequate remedies are available in state court."  *Harris*, 489 U.S. at 270 (O'Connor, J., concurring) (quoting *Harris*, 489 U.S. at 264 (majority opinion)).

11

requirement to be an adequate state procedural rule; the Texas appellate courts strictly and regularly enforce it, *see, e.g.*, *Sharp v. Johnson*, 107 F.3d 282, 285 (5th Cir. 1997), in order to give defendants the proper incentive to present their claims of error in a forum in which they are most easily resolved.

Muniz made no objection to the prosecutor's arguments at trial. He suggests no reason why the state courts would choose not to enforce the contemporaneous objection rule in his case had he raised it on direct appeal. Therefore, we conclude that the rule would foreclose the Texas courts' direct review of Muniz's closing argument challenges.

2.

Texas law also requires habeas petitioners to present all of their state habeas claims in their first petition. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a) (Vernon Supp. 1998). Absent facts giving rise to one of the statutory exceptions, the Texas Court of Criminal Appeals will not entertain a new issue in a successive habeas petition. *See* Ex parte *Davis*, 947 S.W.2d 216, 221 (Tex. Crim. App. 1996).

Although Muniz filed his first state habeas action before art. 11.071 became effective, the Court of Criminal Appeals nonetheless has applied art. 11.071 to preclude the raising of new issues in successive petitions when the claimant's original petition was filed before the statute's effective date. *See id.* Recently, we held art. 11.071 to be an adequate state procedural

12

bar, finding that this rule is strictly and regularly enforced in these circumstances by the Texas Court of Criminal Appeals. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Muniz failed to raise his complaints about the prosecutor's improper closing argument in his first state habeas petition. He has made no showing that any of the statutory exceptions would obtain in his case.[11] He thus would be barred from raising these issues under art. 11.071 in a successive petition for collateral review in state court.

### B.

Muniz, therefore, would find his challenges to the prosecutor's closing argument barred from both direct and collateral review in the state courts. As a result, we are also barred from reviewing the claim unless Muniz can make the requisite showing of cause and actual prejudice, or that a fundamental miscarriage of justice[12] would result from our failure to address his federal claims. *See Coleman*, 501 U.S. at 750.

Muniz has not attempted to make a showing of cause and actual prejudice, nor has he asserted actual innocence. Accordingly, his challenges to the prosecutor's closing argument are barred by the

---

[11] The exceptions include the inability to raise the claim in the first petition because of facts unknown at the time, *see* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a)(1) (Vernon Supp. 1998), and a showing of actual innocence, *see id.* art. 11.071, § 5(a)(3). Muniz offers no showing on any of these prongs, nor does he argue that the Texas Court of Criminal Appeals would find an exception applicable to his case.

[12] "In order to prove a fundamental miscarriage of justice, the prisoner must assert his actual innocence." *Glover*, 128 F.3d at 904 (citation omitted).

13

doctrine of state procedural default.

VI.

Muniz contends that the trial court effectively prevented the admission of mitigating evidence at the sentencing stage in violation of the Eighth and Fourteenth Amendments. At the sentencing phase, Muniz wanted to call Merrill Person to testify. Person worked for the state court system and had gotten to know Muniz during his first trial in 1977. She thereafter made visits to him in prison and had contributed money to his prison account so that he could purchase art supplies.

Person swears in an affidavit that she would have testified that Muniz was remorseful. Such testimony would have rebutted the prosecutor's argument that defendant had shown no remorse for the heinous crime. Accordingly, this testimony would have helped to negate the state's argument that Muniz was likely to commit crime in the future.[13]

The well-settled rule is that the state may not prevent the defendant from introducing any mitigating evidence at the capital sentencing phase.[14] Mitigating evidence is "'any aspect of a

---

[13] The Texas capital sentencing scheme requires the jury to answer two questions affirmatively. First, it must find that "the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(1) (Vernon 1981). Second, it must find that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* art. 37.071, § 2(b)(2).

[14] *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (plurality opinion); *accord Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982); *cf. Penry v. Lynaugh*, 492 U.S. 302,

(continued...)

14

defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Eddings*, 455 U.S. at 110 (quoting *Lockett*, 438 U.S. at 604).

There is little dispute that Person's testimony is mitigating evidence falling within the scope of the *Lockett* rule. The question, however, is whether there was any state action that prevented the defense from calling Person to testify at the sentencing hearing. We conclude that there was not.

The Texas Code of Judicial Conduct, as it read at the time of the trial, provided that a "judge should not lend the prestige of his or her office to advance the private interests of himself or herself or others; nor should he or she convey or permit others to convey the impression that they are in a special position to influence him or her. A judge should not testify *voluntarily* in an adjudicative proceeding as a character witness."[15] The code extends this obligation to the members of the judge's staff: "A judge should require his or her staff and court officials subject to the judge's discretion and control to observe the standards of this Code."[16]

Person was a court official subject to the trial judge's

---

(...continued)
319 (1989) ("The sentencer must also be able to consider and give effect to [mitigating] evidence in imposing sentence.").

[15] TEX. CODE JUD. CONDUCT Canon 2(B) (emphasis added), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit.G app.B (Vernon 1988).

[16] *Id*. Canon 3(B)(2).

discretion and control. Under the state conduct code, therefore, it was entirely appropriate for the judge to advise Person that she could not testify voluntarily for the defendant as a character witness at sentencing. Consequently, to obtain Person's testimony, the defense would have had to issue a subpoena.

This requirement does not run afoul of the Eighth or Fourteenth Amendment when applied at capital sentencing, for it is designed to protect the institutional impartiality of the courts. Were Person allowed to testify voluntarily, she may have signaled to the jury that the court disfavored a death sentence for Muniz. Her actions may have had an impact on a wider audience as well, for the public may have viewed such an action as unfairly favoring one of the litigants over the other.

Muniz responds that issuing a subpoena for Person's testimony would have been futile. He specifically points to testimony at the recusal hearing for the trial judge. There, Muniz's attorney testified that he had seen the judge sternly telling Person in the hallway that she was not to testify voluntarily. Muniz also points to Person's affidavit, in which she swears that she would not have testified voluntarily and that she wished not to be subpoenaed, because she believed it would upset the judge.

Although we sympathize with defense counsel's dilemmaSSissuing a subpoena and risk upsetting the witness and the court, or foregoing the mitigating evidenceSSthere is an insufficient nexus between what can properly be called state actionSSthe existence of the Canon and the actions of the prosecutor and of the judgeSSand

16

the defense's decision not to subpoena Person.[17]  At bottom, defense counsel made a strategic decision to forego Person's testimony, and Muniz must now accept the consequences of that choice.[18]

## VII.

Muniz claims that the jury's knowledge of his prior death sentence amounts to a sentencing error of constitutional magnitude and mandates our vacating his death sentence.  We disagree.[19]

The only means by which the jury came to know of the prior death sentence is that defense counsel elicited it.  When questioning a police officer at the 1986 sentencing phase, counsel

---

[17] *Cf. Callins v. Collins*, 998 F.2d 269, 275 (5th Cir. 1993) ("It is well settled that no *Penry* claim can be asserted for evidence that could have been, but was not, introduced in the sentencing phase . . . .").

[18] The district court believed there to be an Eighth and Fourteenth Amendment violation here but held the error to be harmless.  The court reasoned that but for judicial interventionSSthat is, the trial judge's telling his employee, Person, that she could not testify voluntarilySSthe defense would have had an enthusiastic, credible witness at its disposal.

Because the judge did not actually prevent Person from testifying, however, we disagree.  Judicial enforcement of the ethical code in these circumstances can operate within the bounds of the *Lockett* rule.  As long as the judge leaves some reasonable avenue available to the defendant to introduce any and all mitigating evidence he wishes, the state and the trial judge can otherwise structure the means by which such mitigating evidence is introduced.

[19] Alternatively, we find Muniz's arguments procedurally barred for the reasons mentioned above in part V.  He failed to make a contemporaneous objection on these grounds, although Texas courts would require such an objection in this instance.  *See* TEX. R. APP. P. 52(a); *Norris v. State*, 902 S.W.2d 428, 444-45 (Tex. Crim. App.), *cert. denied*, 516 U.S. 890 (1995).  Thereafter, he failed to raise the issue to the state courts on direct appeal.

Muniz also failed to raise this issue in his initial state collateral claim.  He thus would find this claim barred in a subsequent state habeas action. *See* TEX. CODE CRIM. PROC. art. 11.071, § 5(a).  He has not attempted to show cause and actual prejudiceSSor a fundamental miscarriage of justiceSSresulting from our refusal to reach the issue.

17

asked the officer if he knew whether Muniz had committed any crimes since 1978; the officer stated that he did not know of any such offenses. The defense obviously wanted to use this testimony to negate the future-dangerousness prong of the Texas capital punishment scheme.

When the prosecutor questioned the officer, he sought to remedy the misperception that defense counsel had left in the minds of the jurors. To do so, the prosecutor asked why the officer had no knowledge of any of Muniz's post-1978 bad acts. The officer said this was because Muniz was incarcerated at the time.

Later, defense counsel stated in his closing argument that Muniz had not committed any crimes in the recent past. In response, the prosecutor stated in closing that "there are no nineteen-year-old girls walking across bridges at night on death row in [the state prison]."

We do not find that this testimony "so infected" the sentencing phase with unfairness that it rose to the level of a due process violation. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The introduction of a prior death sentence is allowable if it does not mislead the jury in its sentencing role. *See Romano v. Oklahoma*, 512 U.S. 1, 9 (1994).

Although *Romano* dealt with the introduction of an unrelated offense, rather than a retrial for the same offense, the rationale of that case speaks broadly. Essentially, the Court held that once the basic requirements of the Eighth and Fourteenth Amendments are metSSthat is, narrowing the class of eligible defendants and an

18

individualized inquirySS"the States enjoy their traditional latitude to prescribe the method by which those who commit murder shall be punished." *Romano*, 512 U.S. at 7 (quotation omitted). The Court extended "this latitude" to "evidentiary rules at sentencing proceedings." *Id.*

Assuming that this testimony is admissible under the Texas Constitution and rules of procedure, we find no federal constitutional violation in its admission. After reviewing the record, we believe that these comments were isolated enough that they did not mislead the jury in its sentencing role or diminish its sense of responsibility in considering the death penalty. Therefore, we find this claim to be without merit.


VIII.

Muniz challenges the constitutionality of the introduction of an unadjudicated, extraneous offense at the sentencing phase. The introduction of such evidence at capital sentencing is constitutional: "[W]e hold that the admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments." *Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir. 1987); *accord Callins*, 998 F.2d at 276-77 (5th Cir. 1993). Accordingly, this claim is without merit.[20]

---

[20] The claim is also procedurally barred. Muniz was required to make a contemporaneous objection to the introduction of this evidence at sentencing. *See* TEX. R. APP. P. 52(a); *Bell v. State*, 938 S.W.2d 35, 44-45 (Tex. Crim. App. 1996), *cert. denied*, 118 S. Ct. 90 (1997). His failure to do so forfeited his

(continued...)

19

Muniz challenges the constitutionality of the instruction that the jury not consider the length of time before his parole eligibility under a life sentence when determining whether to give him life in prison or the death penalty.  This claim is problematic on a number of grounds.

A.

Under the Texas death penalty statute, it is constitutional to instruct the jury not to consider the length of time before a capital defendant's eligibility for parole if he receives a life sentence.

> [D]ue process requires the state to inform a sentencing jury about a defendant's parole ineligibility when, *and only when*, (1) the state argues that a defendant represents a future danger to society, and (2) the defendant is legally ineligible for parole.  [T]exas did not statutorily provide for parole ineligibility at the time of [the petitioner's] conviction . . . ."

*Allridge v. Scott*, 41 F.3d 213, 222 (5th Cir. 1994) (emphasis in original).   In *Allridge*, we distinguished *Simmons v. South Carolina*, 512 U.S. 154 (1994), upon which Muniz relies, because in *Simmons*, state law made the petitioner legally ineligible for parole, while Texas capital defendants, sentenced when Muniz was, would be eligible for parole in thirty-five years if sentenced to

---

(...continued)
right to review on direct appeal in state court (he never attempted to raise it on direct appeal in state court in any event), and his failure to raise this issue in his first state habeas claim forfeited his right to raise it in a subsequent state habeas action.  *See* TEX. CODE CRIM. PROC. art. 11.071, § 5(a). Muniz has made no showing of cause and actual prejudiceSSor of a fundamental miscarriage of justiceSSfor us to overcome the default.

life imprisonment.[21]  Accordingly, the claim has no merit under the law of our circuit.[22]

B.

The rule Muniz would have us adopt also would constitute a "new rule" in violation of *Teague v. Lane*, 489 U.S. at 299.  Muniz relies on *Simmons v. South Carolina*, 512 U.S. at 162 (plurality opinion), in which the trial court prevented the jury from knowing that a capital defendant was statutorily ineligible for parole with a life sentence.  The Supreme Court found this action unconstitutional, because the death penalty statute relied on the jury's determination of the defendant's future dangerousness. *See id.*

Muniz seeks to apply (and expand) the *Simmons* rule to his case.  Even assuming, *arguendo*, that we did not foreclose this extension of *Simmons* in *Allridge*, *see Allridge*, 41 F.3d at 222, the Supreme Court has declared *Simmons* a "new rule" under *Teague*. *See O'Dell v. Netherland*, 117 S. Ct. 1969, 1973-74 (1997).  Because Muniz's conviction became final in 1993, *see Muniz v. Texas*, 510 U.S. 837 (1993), and *Simmons* was not decided until 1994, we cannot apply this new rule to Muniz's case unless one of the two *Teague* exceptions attaches.

---

[21] *See* TEX. CODE CRIM. PROC. art. 42.18, § 8(b)(2) (Vernon Supp. 1986).

[22] *But cf. Brown v. Texas*, 118 S. Ct. 355, 355-57 (1997) (opinion of Stevens, J., respecting denial of petition for writ of certiorari) (suggesting that Texas's prohibition on informing juries of parole eligibility is in "obvious tension" with *Simmons*).

*Teague* provides that a new constitutional rule can apply retroactively on federal collateral review only if the new rule (1) puts "certain kinds of primary, private individual conduct beyond the power of the criminal law-making to proscribe" or (2) is a rule of procedure that is "implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 307 (quotations omitted). This second exception is "reserved for watershed rules of criminal procedure." *Id.* at 311.

By definition, the rule Muniz seeks does not fall within the ambit of the first *Teague* exception. In *O'Dell*, the Court held that the *Simmons* rule does not fit within the narrow, second *Teague* exception. "*Simmons* possesses little of the 'watershed' character envisioned by *Teague*'s second exception." *O'Dell*, 117 S. Ct. at 1978. Thus, the *Teague* exceptions are inapplicable, and Muniz is barred from seeking to have this new rule of constitutional law applied retroactively to him.[23]

There being no merit to any of Muniz's claims, the judgment is AFFIRMED, and the stay of execution is VACATED.

---

[23] The state argues that this claim is procedurally defaulted. We need not reach the issue, however, because we find the claim *Teague*-barred. *See Smith v. Black*, 904 F.2d 950, 982 (5th Cir. 1990) (adopting a prudential rule that we decide *Teague* challenges before reaching those based on procedural default), *vacated and remanded on other grounds*, 503 U.S. 930 (1992).