**CORRECTED**

# UNITED STATES COURT OF APPEALS
**For the Fifth Circuit**

---

No. 01-20372

---

REX WARREN MAYS

Petitioner-Appellant,

v.

JANIE COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division

Respondent-Appellee.

---

Appeal from the United States District Court
For the Southern District of Texas, Houston Division

---

(H-00-CV-1157)

January 3, 2002

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Rex Warren Mays, a Texas death row inmate, requests a certificate of appealability, as required by 28 U.S.C. § 2253(c)(1)(A), to appeal the district court's denial of his application for

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

habeas corpus relief. We have reviewed the district court's detailed Memorandum and Order and considered the briefs and record before us. We reach the same conclusion as the district court for essentially the reasons stated in its order of February 23, 2001. Because the petitioner has not made a substantial showing of the denial of a constitutional right, we deny his application.

I.    FACTS AND PROCEDURAL HISTORY

On the afternoon of July 20, 1992, 14 year-old Jeremy Garza found the bloody bodies of his ten year-old half-sister Kristin Wiley and her seven-year old friend, Kynara Carreiro, in his bedroom. Both girls had been stabbed numerous times and were naked from the waist down. An autopsy revealed that the girls died as a result of stab wounds to the neck and head and had also suffered vaginal trauma; however, no semen was found.

Mays, who lived next door to the Wileys, had been fired from his job earlier that day. According to his detailed confession to the police nearly one and a half years later, he had been upset about losing his job on July 20, 1992 and had driven home some time that afternoon. Rather than pulling into his driveway, Mays had parked his car down the street and then approached the Wileys' house. Hearing loud music, he entered the Wileys' unlocked house and called out Kristin's name. Kristin and Kynara ran away from Mays and toward the back of the house. Mays followed them and asked them to turn the music down. The girls refused and told him to leave the house. Mays grabbed a knife from the kitchen and began stabbing both girls. Once he was certain the girls were dead, Mays crawled out of a window next to the back door and went to the fence that separated his yard from the Wileys'. He grabbed the fence with his left hand, intending to jump over the fence, then remembered that he had left his car down the street. Mays reentered the Wiley house through the window and walked out through the front door.

2

When he reached his car, Mays took off his bloody shirt and put it and the knife in a duffle bag. He then drove home and put his car in the garage. He told his wife, who had stayed home from work that day due to illness, that he had been fired. Mays took a shower to wash away the blood on his legs. Later, he went outside to watch the commotion as emergency and police vehicles arrived. He let Becky Wiley, Kristin's mother, use his phone and invited several deputies into his house for refreshments. The next day he washed his bloody clothes, threw the knife into a nearby ravine, and disposed of the duffle bag.

In addition to Mays's very detailed confession, the State also introduced evidence linking the girls' DNA to DNA found in blood traces on Mays's previously washed clothing. Blood was also found on the fence between Mays's house and the Wileys' home.

On September 12, 1995, a jury found Mays guilty of capital murder. At the punishment phase, the jury determined that Mays would commit violent acts in the future and that there were no mitigating circumstances to warrant a sentence of life imprisonment rather than death. The trial court sentenced Mays to death. The Texas Court of Criminal Appeals affirmed his conviction and sentence. The United States Supreme Court denied his petition for writ of certiorari.

Mays filed a state application for habeas relief on August 18, 1998, during the pendency of his direct appeal. The state district court entered findings of fact and conclusions of law recommending that relief be denied. The Texas Court of Criminal Appeals adopted the findings and conclusions of the district court and denied Mays's request for habeas relief in an unpublished order on October 29, 1999.

Mays filed a petition for federal habeas relief on March 31, 2000. On February 22, 2001, the district court denied Mays's petition for a writ of habeas corpus on the merits in a very thorough and

3

detailed memorandum and order. The court also, *sua sponte*, determined that Mays was not entitled to a certificate of appealability (COA).[2]

Mays now seeks relief in this court on four issues: (1) the violation of his due process rights because the court dismissed a prospective juror; (2) the denial of his Sixth Amendment right to effective assistance of counsel based on his trial counsel's failure to object to the dismissal of the prospective juror; (3) ineffective assistance of counsel based on his trial counsel's failure to object to a designated judge, rather than the trial judge, presiding over jury selection; and (4) ineffective assistance of counsel based on trial counsel's failure to object to discussion of the availability of parole during voir dire.

## II.    STANDARD OF REVIEW

Because Mays filed his application for a writ of habeas corpus after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA),[3] its provisions apply to his claims.[4] Under the AEDPA, a prisoner seeking review of the district court's denial of his habeas petition must first obtain a COA.[5] To obtain a COA, the petitioner must make a substantial showing of the denial of a constitutional right.[6] A petitioner makes a substantial showing by demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different

---

[2]*See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that district courts have the power to deny COAs *sua sponte*).

[3]Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 18, 22, 28, 40, and 42 U.S.C.).

[4] *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

[5]28 U.S.C. § 2253(c)(1).

[6]28 U.S.C. § 2253(c)(2); *Wheat v. Johnson*, 238 F.3d 357, 359 (5th Cir. 2001).

4

manner or that the issues presented are adequate to deserve encouragement to proceed further.[7]

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[8]

III.    DUE PROCESS

Under the Due Process clause of the United States Constitution, Mays is entitled to an impartial jury that will conscientiously apply the law and find the facts.[9]  A federal reviewing court is required to accord a presumption of correctness under 28 U.S.C. § 2254(d) to the trial court's determination that a prospective capital sentencing juror should be excused for cause.[10]

Mays alleges that the trial court violated his due process rights by excusing a qualified prospective juror, Charles Silva.  In Texas, trial courts have broad discretion to excuse jurors for cause.[11]  The court excused Silva from jury duty because serving as a juror would have caused Silva economic harm.[12]  After excusing Silva, the court stated on the record that it was his understanding that the prosecution and defense agreed that Silva be excused.  Defense counsel, the prosecutor, and Mays all verbally agreed.  The court then asked, "Specifically, Mr. Mays, is it your request that Mr. Silva be excused?"  Mays answered, "Yes, your Honor."

---

[7]*Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000).

[8]*Id.* at 484; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).

[9]*Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *Wainwright v. Witt*, 469 U.S. 412, 423 (1985).

[10]*Wainwright*, 469 U.S. at 429 (1985); *Milton v. Procunier*, 744 F.2d 1091, 1096 (5th Cir. 1984).

[11]*See, e.g., Clark v. State*, 881 S.W.2d 682, 688-89 (Tex. Crim. App. 1994).

[12]Article 35.03 of the Texas Code of Criminal Procedure allows the trial court to discharge a juror if the court deems the excuse for not serving sufficient.

5

The district court found that Mays's due process argument lacked legal viability under federal law. Mays provided no legal argument or support for his claim. Nor has Mays elaborated on how the court's dismissal of Silva violated the due process clause generally or specifically or how he was harmed by Silva's dismissal. Mays states that he "was deprived of the service of a qualified juror in a death penalty case," but does not assert that the jury chosen was not impartial.

The district court denied Mays's due process claim, finding that the state habeas court's conclusion that the trial court did not err in excusing Silva was not contrary to or an unreasonable application of federal law. We conclude that the district court's assessment of this claim was neither debatable nor wrong.

IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

To establish constitutionally deficient assistance of counsel, Mays must demonstrate that his counsel's performance fell below an objective standard of reasonableness and was prejudicial to his defense.[13] In order to show prejudice, Mays must show that his counsel's errors were so serious as to deprive him of a fair trial.[14] There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance or sound trial strategy.[15] Mays must identify the acts or omissions of counsel that are alleged to be outside the bounds of reasonable professional judgment, and the court must then determine whether, in light of all of the circumstances, the identified acts or omissions were outside the range of professionally competent assistance.[16]

---

[13]*Strickland v. Washington*, 446 U.S. 668, 687-88 (1984).

[14]*Id.*

[15]*Id.* at 689.

[16]*Id.* at 690.

6

Mays claims that his trial counsel was ineffective for: (1) failing to object to Silva's dismissal as a potential juror; (2) failing to object that a designated judge, rather than the trial judge, presided over jury selection; and (3) failing to object to a discussion of the availability of parole during voir dire.

As to Mays's claim that his trial counsel was ineffective for failing to object to Silva's dismissal, the district court found that the trial court acted within the broad discretion afforded under state law for excusing jurors. Mays has yet to explain to any court how the release of Silva from serving on the jury was improper or how it prejudiced the outcome of the trial. Nor has Mays demonstrated how further examination of Silva by his trial counsel would have influenced the court's decision to release Silva. The district court denied this claim, finding that the state habeas court's conclusion that trial counsel did not render ineffective assistance in this regard was not contrary to or an unreasonable application of federal law.[17] We conclude that the district court's assessment of this claim was neither debatable nor wrong.

Mays's claims that his trial counsel was ineffective for failing to object that a designated judge, rather than the trial judge, presided over jury selection. Mays contends that state law requires that the same judge preside over both jury selection and trial in capital cases and that his counsel's failure to object to this violation of state law constitutes ineffective assistance. During state habeas proceedings, the State filed an affidavit by trial counsel stating that he had tried cases before the designated judge and that he considered it in Mays's best interest to have the jury selected in front of the designated judge. Trial counsel also averred that Mays consented to having the designated

---

[17]*See* 28 U.S.C. § 2254(d)(1).

7

judge conduct voir dire.

Assuming *arguendo* that there was a violation of state law, the district court found that Mays had not overcome the strong presumption that his trial counsel was competent. The court also found that trial counsel had acted with the full consent of his client and that Mays had not called into doubt the fairness of the trial. Because Mays failed to demonstrate how the jury selection by a designated judge, rather than the trial judge, resulted in a biased jury panel or violated his constitutional rights, the court denied this claim. We conclude that the district court's assessment of the claim was neither debatable nor wrong.

Mays's final claim is that his trial counsel was ineffective for failing to object to a discussion of parole eligibility during jury selection. According to Mays, discussion of his eligibility for parole after serving 35 years if sentenced to life in prison rather than death, engendered speculation as to the parole implications of his sentence and could not have been a reasonable trial strategy.

Prior to trial, however, Mays had filed a "Motion to Voir Dire on Parole Law" in which he sought permission to ask prospective jurors a series of questions about their attitudes toward parole. Apparently, the trial court granted the motion in part and denied it in part. Both the prosecution and the defense discussed the parole law during voir dire. The court also instructed the jury on the matter, telling them that if Mays were sentenced to life imprisonment, he would not be eligible for parole until he served 35 years with no reductions in time for good behavior. The court further instructed the jury that it was not to consider or discuss possible action by the Board of Pardons and Paroles during its deliberations. He reminded them twice that eligibility for parole does not guarantee that parole will be granted.

8

During state habeas proceedings, the State filed an affidavit by Mays's trial counsel stating that he had wanted to provide the jury with information regarding parole due to the public's general misinformation about parole. Specifically, counsel had wanted the jury to be aware of the mandatory time period that a capital prisoner must serve if sentenced to life rather than death and that the prisoner would have to serve every day with no time off for good behavior.

The district court concluded that the state habeas court's rejection of Mays's ineffectiveness of counsel claim was not contrary to or an unreasonable application of Supreme Court precedent. The court noted that this court routinely denies claims involving the failure to inform the jury of the parole implications of a life sentence.[18] Here, we have the exact opposite claim - that defense counsel was ineffective for failing to object to the jury's being told about the minimum sentence before a capital defendant can be paroled. The Texas Court of Criminal Appeals has held, however, that there is no violation of state law when jurors are presented with correct information regarding parole eligibility, the defendant agreed to the information, and the jury was instructed not to consider parole in their deliberations.[19] Defense counsel's specific request that the jury be informed about parole eligibility was a reasoned strategic decision and no prejudice resulted from the inclusion of the information during voir dire or in the jury instructions. Defense counsel cannot be faulted for failing to object to the discussion of parole during voir dire when counsel was the one who requested that parole information be presented to the jury. Failure to raise meritless claims is not ineffective

---

[18] *See Wheat v. Johnson,* 238 F.3d 357, 361-62 (5th Cir. 2001); *Soria v. Johnson*, 207 F.3d 232, 243 (5th Cir. 2000); *Miller v. Johnson*, 200 F.3d 274, 290-91 (5th Cir. 2000); *Hughes v. Johnson*, 191 F.3d 607, 617 (5th Cir. 1999); *Muniz v. Johnson*, 132 F.3d 214, 224 (5th Cir. 1998); *Montoya v. Scott*, 65 F.3d 405, 416 (5th Cir. 1996).

[19] *Santellan v. State*, 939 S.W.2d 155,170 (Tex. Crim. App. 1997).

assistance.[20]    We agree with the district court that Mays has failed to show that his counsel's trial performance was deficient, that it prejudiced his defense, or that he was deprived of a fair trial. Because Mays has failed to make a substantial showing of the deprivation of a constitutional right, the district court's assessment of Mays's claims was neither debatable nor wrong.

For all of the foregoing reasons, petitioner's request for a Certificate of Appealability is DENIED.

---

[20] *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).