Joseph M. GIARRATANO,
Petitioner–Appellant,

v.

Raymond K. PROCUNIER, Director Virginia Department of Corrections,
Respondent–Appellee (Two Cases).

Nos. 89–4003, 89–4006.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1989.

Decided Dec. 7, 1989.

Rehearing and Rehearing In Banc
Denied Jan. 24, 1990.

Richard Hudson Burr, III (Julius L. Chambers, Charlotte, N.C., Gerald T. Zerkin, Karen L. Ely–Pierce, Richmond, Va., Edward L. Wolf, Arnold & Porter, Washington, D.C., J. Gray Lawrence, Jr., Howell, Daugherty, Brown & Lawrence, Norfolk, Va., on brief), for petitioner-appellant.

Robert Q. Harris, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Stuart, Va., on brief), for respondent-appellee.

Before HALL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Joseph S. Giarratano, a Virginia prisoner under sentence of death, appeals the district court's denial of his petition for a writ of habeas corpus, asserting the following claims:

I. Mr. Giarratano has alleged facts which demonstrate (A) that he was incompetent to stand trial since he could not consult with counsel in the way the circumstances of his case required that he be able to, and (B) that his competence to stand trial was not adequately explored—due to the defaults of the persons charged with evaluating his competence, or of defense counsel, or both—and thus, the district court's summary dismissal of these claims cannot be sustained.

II. Psychiatric testimony introduced against Mr. Giarratano at the sentencing phase of his trial to prove his "future dangerousness" was constitutionally inadmissible, and this court should address this claim on its

merits notwithstanding trial counsel's failure to object.

III. The finding of "future dangerousness" as the sole aggravating circumstance in Mr. Giarratano's case failed to suitably direct and limit his sentencer's discretion.

IV. The sentencer utilized the indisputably mitigating evidence of Mr. Giarratano's mental and physical illness as aggravating evidence to support the finding of future dangerousness, in violation of the Eighth and Fourteenth Amendments.

We find no cause for reversal of the judgment of the district court. We also affirm the court's order denying relief under Federal Rule of Civil Procedure 60(b).

I

In 1979, at a bench trial in the Circuit Court of the City of Norfolk, Giarratano was convicted of the rape and murder of Michelle Kline and the murder of her mother. After committing the crimes, Giarratano traveled by bus to Jacksonville, Florida. In the bus station, he surrendered to a policeman and confessed to the crimes. Upon being returned to Norfolk he again confessed. After he attempted to commit suicide, the trial court ordered that he be removed from the local jail and examined at Central State Hospital. There Dr. Miller M. Ryans found no evidence of mental illness or feeblemindedness and concluded that he was competent to stand trial. Dr. Ryans also found that at the time of the offense he was not mentally ill.

Giarratano pleaded not guilty by reason of insanity. The trial court found him guilty, and at the request of his counsel sent him to the Forensic Clinic of the University of Virginia Hospital. The court directed the clinic to address for the purpose of sentencing whether Giarratano committed the offenses under the influence of extreme mental or emotional disturbance and whether his capacity to appreciate the criminality of his conduct or to conform to the requirements of the law was significantly impaired.

At sentencing, Dr. Ryans and the director of the clinic, Dr. Robert C. Showalter, testified. The trial court found as an aggravating factor the probability "that Giarratano would commit criminal acts of violence that would constitute a continuing threat to society" and concluded that the evidence of stress and reduced control was insufficient to mitigate the penalty. It sentenced Giarratano to death. The Supreme Court of Virginia in *Giarratano v. Commonwealth*, 220 Va. 1064, 266 S.E.2d 94 (1980), recounts in detail the evidence supporting the trial court's judgment.

II

Giarratano, represented by new counsel, sought a writ of habeas corpus from the Circuit Court of the City of Norfolk. In an opinion and order entered May 26, 1981, the state habeas court summarily dismissed allegations challenging the constitutionality of the state's capital murder sentencing procedures both facially and as applied to Giarratano. The court conducted an evidentiary hearing on the allegation of ineffective assistance of counsel. In an opinion and order dated November 13, 1981, the state habeas court ruled that Giarratano's trial counsel afforded him competent representation. The Virginia Supreme Court, finding no reversible error, refused Giarratano's petition for appeal.

Giarratano, through counsel, next applied for a writ of habeas corpus in the District Court for the Eastern District of Virginia attacking his death sentence. He then amended his petition twice. In the second amended petition, Giarratano added claim XI alleging for the first time that he was incompetent to participate in the sentencing proceedings. The parties agreed that Giarratano had exhausted all available state remedies. On October 1, 1985, the district court denied relief on all claims except number XI. On June 25, 1986, after further briefing, it denied relief on this claim and entered final judgment. The court then stayed its judgment to permit Giarratano to present his lack of competency claim to the state courts.

The Circuit Court of the City of Norfolk denied the petition summarily, and the Virginia Supreme Court refused the petition for appeal.

Giarratano returned to federal court and moved to amend his petition to extend his lack of competency claim to the guilt phase of his trial and to further develop the claim. On December 6, 1988, the district court denied leave to amend, vacated the stay of its judgment, and dismissed the petition on the basis of its June 21, 1986, opinion and judgment. The court granted a certificate of probable cause, and Giarratano filed a timely notice of appeal.

In April 1989, Giarratano filed a Rule 60(b) motion. The district court denied the motion. Giarratano appealed, and we consolidated this appeal with the pending appeal of the denial of the writ of habeas corpus.

## III

■ Giarratano's counsel addressed his competency claims in count XI of his second amended petition and in counts XII and XIV of his proposed third amendment, explaining that "[t]he gravamen of his claims has always been that he lacked the capacity to provide information to counsel that was necessary to construct his defense." The factual premise of Giarratano's argument is found in an affidavit he executed in 1988 in which he states that his attorneys had brought certain facts to his attention that raise some doubt about his guilt: "[B]ut simply put, I do not know whether I murdered Toni and Michelle or not. Since the night I woke up in their apartment I have always assumed, convinced myself, that I was guilty; but, I have never had any actual memory of committing the murders." The affidavit discloses that initially Giarratano thought he was evil. He recounts, however, that after long conversations with a counsellor, a cleric, his lawyer, and doctors, he came to the realization that he was not evil. As a result of these conversations, he adds: "I came to accept the fact that although I had committed evil acts I, myself, was not evil. And that I could continue with my appeals, and use

whatever was left of my life to do positive things." Giarratano buttresses his claim by the proffer of psychiatric testimony that he was unable to inform his trial counsel of the information his affidavit discloses and that this information would have resulted in a different evaluation of his future dangerousness.

In the district court, Giarratano's counsel argued that the proper standard for testing his competency claim was set forth in *Rees v. Peyton*, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966), which dealt with a prisoner under sentence of death who wished to forego further legal proceedings. The Supreme Court directed the district court to determine after psychiatric examination whether the prisoner

has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

The district court rejected Giarratano's competency claims. It noted that *Shaw v. Martin*, 733 F.2d 304, 314 (4th Cir.1984), endorsed the competency test set forth in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). *Dusky* states: "[T]he 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " 362 U.S. at 402, 80 S.Ct. at 788.

Giarratano's appellate counsel now fault his federal habeas corpus counsel for presenting an "inartful and confused argument" that "unwittingly misled" the district court. Appellate counsel now argue that the error of the district court lay in its conclusion that Giarratano chose not to cooperate with his trial counsel. They insist that the district court should have granted an evidentiary hearing to determine whether he was able to cooperate.

We find no error in the district court's denial of the competency claims. The district court did not err by applying the

*Dusky* standard instead of the *Rees* standard, which Giarratano's habeas corpus counsel advocated. Actually there is no substantive difference between the two standards. Both seek to assure that one charged with crime will not be tried or punished unless he has the mental capacity to understand the situation that confronts him and the ability to consult rationally with his counsel about his defense.

The examination of Giarratano conducted at Central State Hospital and the testimony of the staff psychiatrist establish that Giarratano met the competency standard prescribed by *Dusky*. *See Giarratano,* 220 Va. at 1070–71, 266 S.E.2d at 97–98. Giarratano's recantation of his confessions several years after his trial and his assertion that now he does not know whether he committed the crimes do not provide an adequate factual basis for granting an evidentiary hearing. Giarratano's doubts about his guilt are insufficient to justify granting the writ.

### IV

■ Giarratano's Rule 60(b) motion sought relief from the order denying him leave to amend his petition for a third time to extend his claim of incompetency to the guilt phase of his trial. He alleged newly discovered evidence discrediting the facts proved by the Commonwealth that corroborated his confession. He also contended that his mother committed fraud with respect to information given in the presentence report. The district court held that the evidence was not new; that it simply was a "reweighing" of the prosecution's evidence. It also held that due diligence to discover the evidence had not been shown. The court dismissed the allegations of fraud on the ground that Giarratano's mother was not an adverse party.

On appeal, a district court's order denying relief sought pursuant to Rule 60 can be overturned only for abuse of discretion. *Transportation, Inc. v. Mayflower Services, Inc.,* 769 F.2d 952, 954 (4th Cir.1985). We find no abuse of discretion. A state prisoner is entitled to the federal writ "if it is found that upon the record evidence ad-

duced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). But this principle does not entitle Giarratano to relief. His confessions and the evidence corroborating them sustain the court's finding of guilt. Quite properly the district court recognized that in considering a petition for a writ of habeas corpus it is not its function to weigh the evidence or test the credibility of the witnesses that established guilt beyond a reasonable doubt at the state trial. *Grundler v. North Carolina,* 283 F.2d 798, 801 (4th Cir.1960). Rule 60(b) restricts consideration of newly discovered evidence to that "which by due diligence could not have been discovered in time to have moved for a new trial." The rule restricts consideration of fraud to that attributed to an "adverse party." The district court properly applied these provisions of the rule as additional reasons justifying denial of Giarratano's motion.

### V

■ Giarratano asserts that his Fifth Amendment right to be free from self-incrimination was violated at the sentencing phase of his trial by the use of statements he made at a pretrial mental examination. The factual basis of his claim is the omission of a warning that his statements could be used at sentencing. The legal basis is *Estelle v. Smith,* 451 U.S. 454, 463, 101 S.Ct. 1866, 1874, 68 L.Ed.2d 359 (1981), in which the Court held that the prosecutor's use at sentencing of statements given without warning at a competency examination infringed the Fifth Amendment.

*Smith,* however, does not control this case. The Court's opinion discloses that Smith had never been advised of his right to remain silent at the pretrial psychiatric examination. 451 U.S. at 460, 467, 101 S.Ct. at 1871, 1875. Giarratano, in contrast, had been told by the examining doctor that he had a right to speak or remain silent as he chose; that if he did talk to the examiners whatever he said could not be used against him if he pleaded not guilty;

but his statements could be used against him if he pleaded not guilty by reason of insanity. This advice conformed to the principles of *Gibson v. Zahradnick,* 581 F.2d 75 (4th Cir.1978). The advice also anticipated *Smith* where the court recognized that if a defendant pleads insanity, he may be required to submit to a mental examination by the prosecution's psychiatrist. 451 U.S. at 465, 101 S.Ct. at 1874 (dictum).

Smith did not plead insanity, thus the statements he made at the competency examination were not admissible at trial for any purpose. Unlike Smith, Giarratano pleaded insanity and his statements to the examining psychiatrist about the crimes and his consumption of alcohol and drugs were admissible at the guilt phase of the trial to rebut the claim that he was insane.

On direct examination at sentencing, the prosecution's psychiatrist did not repeat the testimony he had previously given. Without recounting any details, he referred to the reports he had studied and his evaluation of Giarratano as the basis for his opinion of future dangerousness. On direct examination nothing was introduced about Giarratano's statements at the competency examination that the court had not heard before.

Cross examination by defense counsel elicited a fact that the doctor had not mentioned at the guilt phase or on his direct examination at sentencing. The doctor testified that Giarratano told him that he wanted to kill himself and if an aid attempted to stop him he would "take the aid with him." But this statement was not the result of any interrogation, and it was not made during a formal interview. Though Giarratano was in custody, the threat was spontaneous and voluntary. In *Smith,* the Court reiterated: " 'Volunteered statements ... are not barred by the Fifth Amendment.' " 451 U.S. at 469, 101 S.Ct. at 1876 (quoting *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966)).

There is another significant difference between the cases. Smith introduced no psychiatric evidence in either the guilt or the penalty phases of his trial, and, as the Court pointed out, he had not indicated that he would do so. 451 U.S. at 466, 101 S.Ct. at 1874. In contrast, Giarratano had indicated that he would introduce psychiatric testimony at sentencing, and he did so.

Ostensibly the evidence that Giarratano presented through the testimony of the director of the Forensic Clinic at the University of Virginia was to prove mitigating circumstances. The director furnished a written report and testified that Giarratano was not psychotic, that he suffered from a schizoid personality disturbance, and that he was under extreme mental and emotional disturbance at the time of the crimes. He attributed Giarratano's condition principally to his abused childhood and his consumption of drugs and alcohol. Giarratano's introduction of psychiatric evidence for the purpose of mitigation enabled the prosecution to introduce psychiatric evidence, including that derived from an examination of Giarratano, to show future dangerousness. In *Smith* the Court observed that "a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase." 451 U.S. at 472, 101 S.Ct. at 1877. This is precisely what happened in Giarratano's case, distinguishing the admission of the examiner's testimony from the inadmissible evidence described in *Smith.* The fact that the prosecutor's psychiatrist testified first is immaterial. The prosecutor and his psychiatrist had read the director's report, and they knew that Giarratano intended to introduce psychiatric testimony at the sentencing proceedings. We conclude that the prosecution did not infringe Giarratano's Fifth Amendment right.

## VI

 *Smith* also held that the accused was denied his Sixth Amendment right to the assistance of counsel because the competency examination was conducted without notifying counsel in advance that it would encompass the issue of future dangerousness. 451 U.S. at 470–71, 101 S.Ct. at 1876–77. Giarratano, like Smith, was examined without prior notification to his

counsel that the results would be used at the penalty phase on the issue of future dangerousness.

Nevertheless, Giarratano is not entitled to relief on the basis of his Sixth Amendment claim that his right to counsel was abridged. Giarratano's counsel did not object to the lack of opportunity to consult with his client before the competency examination. Nor did he object at the penalty phase to the testimony of the psychiatrist who conducted the competency examination. The absence of objections raises a procedural bar to the assertion of infringement of Fifth and Sixth Amendment rights, unless Giarratano can show cause for the procedural default and resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Giarratano seeks to defeat the procedural bar by showing ineffective assistance of counsel.

Giarratano's state habeas counsel expressly disavowed any claim of ineffective representation of counsel at the guilt phase of the trial. The claim of ineffective representation is limited to the penalty phase, especially to counsel's failure to object to testimony about future dangerousness given by the psychiatrist who conducted Giarratano's competency examination.

The claim of ineffective representation does not amount to a cause justifying avoidance of the procedural default. With the possible exception of moving Giarratano from Norfolk to Central State Hospital without counsel's knowledge, there was no "external impediment" to counsel's compliance with state procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488, 497, 106 S.Ct. 2639, 2645, 2650, 91 L.Ed.2d 397 (1986). Actually, his trial counsel correctly anticipated *Smith*, which noted that the testimony of a prosecutor's psychiatrist is admissible when the defendant presents psychiatric testimony at the penalty phase. 451 U.S. at 472–73, 101 S.Ct. at 1877–78 (dictum). Moreover, for reasons explained in Part V, there was no infringement of Giarratano's Fifth Amendment right to be free of self-incrimination. Giarratano cannot show prejudice.

## VII

We now turn to Giarratano's challenge to the constitutionality of the sentencing scheme under which he was given the death penalty. Giarratano litigated this claim in the state habeas court, but he did not exhaust his state remedies by appealing the adverse ruling on the merits to the Virginia Supreme Court. *See* 28 U.S.C. § 2254(b). Nevertheless, the parties have agreed that he has now exhausted all available state remedies. On the basis of this agreement, we conclude that the claim is properly before us.

Giarratano contends that the aggravating predicate of "future dangerousness" contained in Virginia's capital punishment scheme is constitutionally infirm because it is too vague to cabin the discretion of a court in any meaningful way. That is the result of two alleged defects in the future dangerousness predicate. The first is simply that the definition of future dangerousness is imprecisely written. The second is that future dangerousness is defined in two separate places in Virginia's death penalty statutes and that these definitions are inconsistent with one another. *Compare* Va.Code Ann. § 19.2–264.2 *with* § 19.2–264.4(C). According to Giarratano, these infirmities when coupled with the Virginia Supreme Court's failure to interpret future dangerousness in a uniform manner render the dangerousness predicate unconstitutional on its face and as applied to his case.

We find, as have the Virginia Supreme Court and this court in prior decisions, that the future dangerousness provision is constitutional. *Briley v. Bass*, 750 F.2d 1238, 1245 (4th Cir.1984); *Smith v. Commonwealth*, 219 Va. 455, 477–78, 248 S.E.2d 135, 148–49 (1978). Future dangerousness and the other aggravating circumstances provided in the Virginia death penalty statutes are only a part of the means by which Virginia attempts to narrow the class of persons who receive the death penalty. Much of the narrowing occurs by way of the substantive statute that defines Virginia's capital offenses in the first place. That statute prescribes eight types of mur-

der that may be considered capital crimes. *See* Va.Code Ann. § 18.2–31. The constitutionality of the statute is buttressed by reading it in the context of the already narrowly defined range of capital offenses. *Lowenfield v. Phelps*, 484 U.S. 231, 244–46, 108 S.Ct. 546, 554–55, 98 L.Ed.2d 568 (1988).

Nor is there a problem created by the two different descriptions of future dangerousness in the Virginia statutes. The two dangerousness formulas define future danger the same: a probability that the defendant "would commit criminal acts of violence that would constitute a continuing serious threat to society." The texts vary only in the sort of evidence they allow to prove dangerousness. Section 19.2–264.2 indicates that a court or jury should consider "the past criminal record of the defendant," while § 19.2–264.4(c) instructs consideration "based upon evidence of the prior history of the defendant or of the circumstances surrounding the commission of the offense." The variance is not significant. One statute, § 19.2–264.4(c), simply allows a broader range of evidence to be considered. Because the two definitions are consistent and because neither is vague, we affirm the district court's dismissal of Giarratano's challenge to the sentencing scheme.

## VIII

■ Giarratano complains that the sentencing court wrongly considered evidence of his mental illness and drug and alcohol abuse to support its finding of future dangerousness. Because his substance abuse and mental illness caused the past behavior which established the probability of violent behavior to come, Giarratano reasons that sentencing him to death amounts to nothing more than punishing him for being mentally ill and for being a substance abuser. He considers this unconstitutional in light of *Zant v. Stephens*, 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983), in which the Court said:

Georgia [has not] attached the "aggravating" label to factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as

for example ... conduct that actually should militate in favor of a lesser penalty, such as perhaps the defendant's mental illness.

*Zant*, however, was not referring to conduct committed under the influence of voluntary consumption of drugs and alcohol.

Giarratano's future dangerousness was based on his voluntary substance abuse in addition to his prior convictions and other past bad acts and the circumstances surrounding the deaths of the two victims. These are fully set forth in the sentencing memorandum of the trial judge and summarized in the Virginia Supreme Court's decision affirming his conviction. *Giarratano*, 220 Va. at 1075–79, 266 S.E.2d at 100–03. All are permissible factors in the decision to impose the death sentence. We therefore affirm the district court's ruling that there is sufficient relevant evidence to support a finding of future dangerousness.

AFFIRMED.