**Russel W. BURKET, Petitioner,**

v.

**Ronald J. ANGELONE, Director of the Virginia Department of Corrections, Respondent.**

**No. 2:97CV235.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 23, 1999.

458

Michele Jill Brace, Robert Edward Lee, Jr., Jennifer Leigh Givens, Richmond, VA, Mark Evan Olive, Tallahassee, FL, for petitioner.

Robert Homer Anderson, III, Office of Atty. General, Richmond, Va, for respondent.

## OPINION AND FINAL ORDER

JACKSON, District Judge.

On January 19, 1994, Petitioner pled guilty in the Circuit Court for the City of Virginia Beach to the murders of Katherine Tafelski and Ashley Tafelski, Petitioner's neighbors. Petitioner also pled guilty to one count of statutory burglary, one count of sexual penetration with an inanimate object, and two counts of malicious wounding of A.J. Tafelski and Chelsea Brothers. On March 24, 1994, the court sentenced Petitioner to death for the murders, and to two life sentences and a

total of 40 years in prison for the non-capital convictions.

Petitioner subsequently appealed his death sentence to the Virginia Supreme Court, but to no avail. Furthermore, the United States Supreme Court denied Petitioner's petition for a writ of certiorari on April 3, 1995.

On July 19, 1996, Petitioner filed a petition for a writ of habeas corpus in the Virginia Supreme Court, and this petition was denied on November 20, 1996. On June 26, 1997, Petitioner filed a petition for a federal writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging violations of his federal constitutional rights. This matter comes before the Court on Respondent's July 30, 1997 motion to dismiss the petition. On October 16, 1997, Petitioner filed a response and traverse to Respondent's motion to dismiss. Respondent filed a reply to Petitioner's response on November 10, 1997. On June 25, 1998, Respondent filed a supplemental memorandum in support of his motion to dismiss.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, the matter was referred to a United States Magistrate Judge for Report and Recommendation ("R & R"). On July 7, 1998, the Magistrate Judge filed his R & R. The Magistrate Judge recommended that the petition be denied and dismissed. Furthermore, the Magistrate Judge recommended that Petitioner's request for an evidentiary hearing be denied and that the Court decline to issue any certificate of appealability required by Rule 22(b) of the Federal Rules of Appellate Procedure.

By copy of the R & R, each party was advised of the right to file written objections to the findings and recommendations made by the Magistrate Judge. On August 24, 1998, this Court received "Petitioner's Objections to the Magistrate Judge's Report and Recommendation" and Respondent's "Objections to Magistrate Judge's Report and Recommendation." Petitioner filed additional objections to the R & R on August 31, 1998. Respondent filed a response to Petitioner's objections on September 21, 1998.

Petitioner's August 24, 1998 objections are as follows: (1) the procedural default rule in *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885 (1981), was erroneously applied to many of Petitioner's claims on direct appeal, (2) the Virginia Supreme Court's action on direct appeal does not constitute an adjudication on the merits, (3) the state court erroneously denied Petitioner's claims without an evidentiary hearing, and (4) the Magistrate Judge improperly relied upon affidavits submitted by Respondent in denying Petitioner relief.

Petitioner's August 31, 1998 objections to the R & R are as follows [1]: (1) Petitioner objects to the Magistrate Judge's recommendation that an evidentiary hearing is not required, (2) Petitioner maintains that summary judgment is inappropriate in this case because the facts are in dispute, and (3) Petitioner argues that the Magistrate Judge erroneously relied on the state court judgment.[2]

Respondent's objections to the R & R are as follows: (1) Respondent objects to the standard of review the Magistrate

---

1. Petitioner states in a footnote in his objections to the R & R that he "objects to the Magistrate's findings to the degree the findings conflict with the Petitioner's pleadings." Petitioner's Objections to the Magistrate Judge's Report and Recommendation at 4 n. 4. This objection is improper because a party must file "*specific,* written objections to the [Magistrate Judge's] proposed findings and recommendations." Fed.R.Civ.P. 72(b) (emphasis added).

2. The Court finds that Petitioner's August 24, 1998 objections are encompassed by his expanded objections of August 31, 1998. Therefore, the Court will examine only the more expansive objections of August 31, 1998.

Judge applied when evaluating Respondent's motion to dismiss/motion for summary judgment, and (2) Respondent objects to the Magistrate Judge's conclusion that Virginia does not currently satisfy the "opt-in" provisions in Chapter 154 of the Anti-terrorism and Effective Death Penalty Act ("AEDPA").

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the Court, having reviewed the record in its entirety, shall make a *de novo* determination of those portions of the Magistrate Judge's R & R to which the parties specifically objected. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. *See* 28 U.S.C. § 636(b)(1).

## I. FACTS AND PROCEDURAL HISTORY

The R & R contains a detailed statement of the facts surrounding the crime and the procedural history of this case. The Court adopts the Magistrate Judge's explication of the facts. with some modifications. The facts and procedural history are as follows.

### A. Facts

A detailed statement of the facts is set forth in *Burket v. Commonwealth,* 248 Va. 596, 450 S.E.2d 124 (1994), which the Magistrate Judge adopted in his R & R. For the Court's purposes, the facts are more concisely stated as follows.

On January 14, 1993, at about 2:00 p.m., Terry Cain placed a telephone call to Katherine Tafelski's mother, Barbara Pullman. Cain informed Pullman that Cain's three-year-old daughter, Chelsea Brothers, had spent the night with Katherine Tafelski and her children. Mrs. Tafelski agreed to take Chelsea to school on the morning of January 14, but she failed to do so. Pullman placed a telephone call to her daughter's home, but she received an answering machine recording, "which was not normal." Pullman then decided to go to her daughter's residence.

When Pullman arrived at her daughter's home, she was unable to gain entry because the front door was locked. Joan Poillon, who lived in the neighborhood, began to help Pullman gain access to the residence. As they tried to enter the front door, they heard Chelsea crying. Chelsea was inside the home, but was unable to open the front door.

Pullman and Poillon went to the rear of the house and discovered that the back door was open. When they entered the house, Chelsea ran to them crying. They observed that Chelsea had suffered a facial injury.

Pullman and Poillon began to search the house in an attempt to locate Katherine Tafelski, Ashley Tafelski (age five), and Andrew J. Tafelski, Jr. (age three). Pullman and Poillon found Katherine Tafelski's partially nude body, covered in blood, lying on her bed. It was apparent that she had been struck numerous times in the head and sexually assaulted with some type of object. The white sweatshirt that she had been wearing was ripped in several places and soaked with blood.

Pullman ran to the kitchen area of the residence and placed a telephone call to the police. Poillon continued to search for the children. Poillon entered Ashley Tafelski's bedroom, and discovered Ashley's body in her bed with her hand hanging over the side of the bed and a large pool of blood beneath her. It appeared that Ashley had been struck several times in the head with a hard object. A small piece of bone fragment, "coupled with hair and blood," was near the foot of Ashley's bed.

Poillon found Andrew Tafelski, Jr., in his bedroom lying in the top bunk bed. He was suffering from numerous head and facial injuries, but he was still conscious.

After the police arrived at the residence. Detective Shawn Hoffman and another officer conducted a search of the area surrounding the residence. A trained dog located a track that extended from the

rear utility room of the house to a wooded area behind the home. An officer found an old double-barreled shotgun in the woods. The shotgun had been removed from the Tafelski's residence.

The intruder's apparent point of entry was a door located in the back of the Tafelski's residence. The door contained numerous fresh tool marks. The tool marks were of a similar pattern and shape as marks found on the bodies of Katherine and Ashley Tafelski.

A blue washcloth was found in the room near Katherine Tafelski's body. Lynn S. Baird, a forensic scientist, examined the washcloth and determined that spermatozoa were present. Robert W. Scanlon, a forensic scientist, determined by using DNA tests that the spermatozoa found on the washcloth stain were consistent with Russel Burket's DNA profile. Approximately 7.8% of the Caucasian population possess the same HLA DQa type as found in the examined stain.

The bodies of Katherine and Ashley Tafelski were taken to the Norfolk Crime Lab for autopsies and forensic examination. Dr. Leah Linda Elizabeth Bush, assistant chief medical examiner, performed the autopsies.

The autopsy of Katherine Tafelski's body revealed the following. Her head had been struck six or seven times with an object of significant weight. The skull was completely crushed, and it appeared that massive force had been applied. She had marks on her right upper inner thigh that, upon observation, appeared to resemble a belt buckle. In addition, she suffered vaginal and anal penetration by an inanimate object. The vaginal penetration was made with an object ranging in diameter from one-half to two inches and penetrating to a length of 21 inches. The object, later identified as a rusted metal pry bar, is about 30 inches long and contains a "screwdriver tip."

Dr. Bush found a small piece of "bark/wood" while examining the victim's inter-nal organs. Four or five abrasions, two of which contained small lacerations, were present on the victim's right side. Dr. Bush noted that either the blunt force trauma to the victim's head or the injury to her vaginal area and its related perforations would have been sufficient to cause death.

The autopsy of Ashley Tafelski's body revealed the following. Ashley suffered massive head injuries that were inflicted by the same object that was used to kill her mother. She had four or five lacerations to her head. Two of the head wounds evidenced a "knurled" pattern on the skin. One of the wounds to Ashley's head did not break the skin, but crushed the skull underneath. Two of the wounds to Ashley's head evidenced markings consistent with the tool marks found at the point of entry at the residence. Dr. Bush determined that the cause of Ashley's death was blunt force trauma to her head.

Andrew Tafelski, Jr., suffered a double break in his jaw, at the joint and at the tip. He also had a wound above one of his eyes. Chelsea Brothers suffered bruises to her head, face, and body. *Burket*, 248 Va. at 599–602, 450 S.E.2d 124.

## B. Procedural History

On January 19, 1994. Russel W. Burket pled guilty in the Circuit Court for the City of Virginia Beach to the following: one count of statutory burglary in violation of Virginia Code § 18.2–90, one count of capital murder for the killing of Katherine Tafelski and Ashley Tafelski in the same act or transaction in violation of Virginia Code §§ 18.2–31 and 18.2–10, one count of sexual penetration with an inanimate object in violation of Virginia Code § 18.2–67.2, and two counts of malicious wounding of A.J. Tafelski and Chelsea Brothers. On March 24, 1994. Petitioner was sentenced to death on the capital murder conviction for the killing of more than one person as a part of the same act or transaction pursuant to Virginia Code § 18.2–31.7, and to

two life sentences and a total of 40 years in prison on the non-capital convictions.

Petitioner appealed his capital conviction and death sentence, and the judgment was affirmed by the Virginia Supreme Court on November 4, 1994. *See generally Burket*, 248 Va. 596, 450 S.E.2d 124. The United States Supreme Court denied his petition for a writ of certiorari on April 3, 1995.

Thereafter, a petition for a writ of habeas corpus was filed (which was later amended) in the Virginia Supreme Court on July 19, 1996. A review of the state court records reveals that Petitioner also filed an Ex Parte Motion for Funds and Expert and Investigative Assistance, and an Ex Parte Motion for Release of "Best Evidence Recordings" to defense experts. The motions were subsequently denied. Petitioner then filed a Motion for Funds for Expert and Investigative Assistance with the state court, and it was subsequently denied. On November 20, 1996, the Virginia Supreme Court denied Petitioner's petition for habeas corpus relief. A rehearing petition was filed, and it was denied on January 10, 1997. On February 4, 1997, pursuant to Virginia Code § 53.1-232.1, the Circuit Court of the City of Virginia Beach set March 11, 1997 as Petitioner's execution date.

On March 5, 1997, Robert Lee, Esquire, of the Virginia Capital Representation Resource Center, filed motions on behalf of Petitioner with this Court for leave to proceed *in forma pauperis*, for admission of counsel *pro hac vice*, for appointment of counsel, and for a stay of execution. Respondent moved on that same day to strike unauthorized pleadings, arguing that the Virginia Capital Resource Center was without authority to represent Petitioner. Following a conference call with counsel addressing some concerns and assessing contradictory information about whether Petitioner wished to proceed with his execution or pursue a federal habeas petition, the Court stayed Petitioner's execution and agreed to rule on the motions filed on

behalf of Petitioner. On March 7, 1997, the Court also granted Petitioner's motion to proceed *in forma pauperis*, and granted the admission of Mark E. Olive, Esquire, to appear as counsel for Petitioner. Respondent appealed this stay of execution to the Fourth Circuit, which subsequently dismissed the appeal following Respondent's filing of a motion for voluntary dismissal of appeal.

The Court appointed Mark E. Olive, Esquire, and Andrew A. Protogyrou, Esquire, as counsel for Petitioner in his federal habeas proceedings on March 28, 1997. On July 30, 1997. Respondent filed a Motion to Dismiss and Rule 5 Answer. Because of Respondent's reliance on attachments, the Court construes the motion as one for summary judgment. *See* Fed. R.Civ.P. 12(b)(6) (motion to dismiss supported by matters outside the pleadings shall be treated as a motion for summary judgment under Rule 56).

Beginning on September 5, 1997, the Court received several pieces of correspondence from Petitioner whereby he attempted to withdraw his federal habeas petition. The second letter from Petitioner requesting to abandon his petition was received by the Court on October 24, 1997. The Court made several attempts to clarify Petitioner's intentions through correspondence with counsel. On November 6, 1997, Petitioner was brought before the Court to address his intentions regarding his federal habeas petition. Petitioner stated that he wished to discontinue the pursuit of federal habeas relief and that he no longer had faith in the ability or intentions of his counsel. In turn, counsel expressed concern with Petitioner's mental status and argued that there were competency issues that needed to be addressed by the Court.

On November 13, 1997, the Court received another letter from Petitioner whereby he stated that he did not want to pursue his federal habeas petition, and he stated that he wanted to have an execution

date set. Thereafter, this Court ordered that Petitioner undergo a psychiatric evaluation by Dr. Paul Mansheim in order to conclude whether he was suffering from a mental disease or defect which prevented him from understanding his legal position or the options available to him, and from making a rational choice from among those options. Additionally, the psychiatrist was asked to report whether the conditions of Petitioner's incarceration, including his medication, had adversely affected his ability to make a rational choice among his legal options. *See* January 29, 1998 Order; March 5, 1998 Order.

While Petitioner's attempt to withdraw his petition was pending before this Court, the Magistrate Judge ruled on three non-dispositive motions that counsel for Petitioner filed. Petitioner filed a Motion for an Evidentiary Hearing, a Motion to Invoke Discovery, and a Motion For Authorization to Retain Necessary Expert Services. On November 14, 1997, the Court denied each one of Petitioner's motions.

When Dr. Paul Mansheim attempted to conduct the court-ordered psychiatric evaluation of Petitioner on February 13, 1998, Petitioner refused to be evaluated by him, citing a personal conflict resulting from Mansheim's conduct at Petitioner's trial. *See* February 19, 1998 Letter from Petitioner's Father; March 5, 1998 Letter from Respondent. During his appellate and collateral review proceedings, Petitioner repeatedly challenged the propriety of the conduct of Dr. Mansheim, who was called to testify by the Commonwealth at Petitioner's sentencing. According to Petitioner, Dr. Mansheim exceeded the permissible scope of his testimony at the sentencing by commenting about Petitioner's future dangerousness.

On March 4, 1998, this Court declined to substitute another psychiatrist for Dr. Mansheim, and in view of Petitioner's refusal to be evaluated, this Court denied Petitioner's request to withdraw his habeas petition. Accordingly, this Court directed the Magistrate Judge to proceed with the review of the petition and to prepare a Report and Recommendation.

## II. CLAIMS PRESENTED

Petitioner set forth the following claims as grounds for federal habeas relief.

I. Trial Counsel was operating under several conflicts of interest in violation of Petitioner's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

II. Defense counsel abdicated his role to investigate, prepare, and defend Petitioner, in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments;

III. Petitioner's plea was not knowingly, intelligently, and voluntarily entered in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments;

IV. The trial judge's failure to ask about competency and to conduct a competency hearing violated Petitioner's Fifth, Sixth, Eighth and Fourteenth Amendment rights;

V. Petitioner was incompetent during critical proceedings in violation of his Fifth. Sixth, Eighth, and Fourteenth Amendment rights;

VI. Petitioner's confession was involuntary, he did not knowingly, intelligently, and voluntarily waive his right to silence and to counsel, and the Commonwealth's introduction of his statements against him violated the Fifth, Sixth, Eighth, and Fourteenth Amendments;

VII. Petitioner was deprived of his right to the effective assistance of counsel at trial in violation of the Virginia Constitution, and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in that his attorney:

    (a) Failed to seek a competency hearing;

    (b) Did not present expert evidence at the suppression hearing of Petitioner's

mental illness and the involuntariness of his confession;

(c) Did not object to the fast-forwarding of the videotaped confession at the suppression hearing;

(d) Did not object to the Commonwealth's expert witness's opinion that Petitioner represented a future danger;

(e) Did not inform the trial court of certain information concerning Petitioner's medication, and mental state throughout his incarceration;

(f) Agreed to a stipulation of facts which erroneously characterized the Commonwealth's case against Petitioner;

(g) Failed to interview numerous witnesses who could have testified in mitigation;

(h) Did not present testimony from mental health experts who had previously treated Petitioner;

(i) Did not interview or present as mitigating witnesses any jail personnel who were treating Petitioner's mental illness at the time of trial: and.

(j) Ineffectively represented Petitioner on appeal;

VIII. Counsel unreasonably utilized mental health experts, depriving Petitioner of the assistance the experts were mandated to provide;

IX. Petitioner was deprived of his right to the effective assistance of competent and independent mental health experts in violation of Article I, Sections 8, 9, and 11 of the Virginia Constitution, and his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);

X. The state violated Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights by introducing expert testimony regarding "future dangerousness." derived from an evaluation of Petitioner which was not to include the issue of future dangerousness.

### III. OBJECTIONS TO THE REPORT AND RECOMMENDATION

On July 7, 1998, the Magistrate Judge filed his R & R. The Magistrate Judge recommended that the petition be denied and dismissed in its entirety. Furthermore, the Magistrate Judge recommended that Petitioner's request for an evidentiary hearing be denied and that the Court decline to issue any certificate of appealability required by Rule 22(b) of the Federal Rules of Appellate Procedure.

### A.  Petitioner's Objections

Petitioner's objections to the R & R are as follows:

(1) Petitioner objects to the Magistrate Judge's recommendation that an evidentiary hearing is not required;

(2) Petitioner maintains that summary judgment is inappropriate in this case because the facts are in dispute;  and

(3) Petitioner argues that the Magistrate Judge erroneously relied on the state court judgment.

### B.  Respondent's Objections

Respondent's objections to the R & R are as follows: [3]

---

**3.** Respondent also brought to the attention of the Court a number of minor errors in the R & R. These errors include the following: page 15 at lines 16 and 19 refers to "respondent." rather than "petitioner;" page 33 at line 16 refers to "respondent" instead of "petitioner;" page 70 at line 17 omits the word "not" from the phrase "does agree;" page 102 at line 2 refers to "respondent" rather than "petitioner;" and page 102 at line 13 refers to "Penoyer" instead of "Poyner." The Court agrees with these corrections and modifies the R & R accordingly.

(1) Respondent objects to the standard of review the Magistrate Judge applied when evaluating Respondent's motion to dismiss/motion for summary judgment; and

(2) Respondent objects to the Magistrate Judge's conclusion that Virginia does not currently satisfy the "opt-in" provisions in Chapter 154 of the AEDPA.

## IV. RESPONDENT'S OBJECTIONS

The Court will first analyze Respondent's objections because the resolution of these objections impacts the scope of the Court's review.

### A. Standard of Review

As previously stated, the Magistrate Judge construed Respondent's Motion to Dismiss as one for summary judgment because of Respondent's reliance on attachments. *See* Fed.R.Civ.P. 12(b)(6) (motion to dismiss supported by matters outside the pleadings shall be treated as a motion for summary judgment under Rule 56). Accordingly, the Magistrate Judge outlined the principles governing a summary judgment motion. Respondent objects to the application of the summary judgment standards to this case. Specifically, Respondent argues that it was improper for the Court to view the record in this case in the light most favorable to the non-moving party.

■ The Court concludes that the proper standard of review in this case is governed by the AEDPA, which amended 28 U.S.C. § 2254. The Anti-terrorism and Effective Death Penalty Act is applicable to Petitioner's case because his petition was filed well after April 24, 1996, the enactment date of the Act. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059,

138 L.Ed.2d 481 (1997) (holding that the new provisions of chapter 153 generally apply to cases filed after the AEDPA became effective). The newly amended 28 U.S.C. § 2254(d) establishes the standard of review to be applied by a federal court considering a state prisoner's petition for habeas relief. Section 2254(d) provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

■ If there is a qualifying state decision on the merits, the writ shall not be issued unless one of the statutory exceptions is met. Section 2254(d)(1) governs the standard of review for legal claims. A federal court may grant a petition if it finds that the state decision was contrary to clearly established federal law, or involved an unreasonable application of clearly established federal law. This section abrogates the *de novo* review that was required under *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).[4] *See McLee v. Angelone*, 967 F.Supp. 152, 156 (E.D.Va.1997). However, the review of legal claims is still *de novo* in the sense that federal courts must independently de-

---

4. Prior to the passage of the AEDPA, review was *de novo* in the strictest sense of that term. Under the *Brown v. Allen* line of cases, insofar as petitions presented questions of law or mixed questions of law and fact, federal courts were required to treat the petitions as

a wholly new complaint. Federal courts were required to treat state court adjudications in the particular case as nothing more than a potentially relevant authority from the court of last resort of another jurisdiction. *Brown*, 344 U.S. at 458, 73 S.Ct. 397, 97 L.Ed. 469.

termine whether the state court decision is correct under federal law. The AEDPA does not require any state decision to be upheld where the decision is "contrary to" or is "an unreasonable application of" federal law. Thus, the Act does not eliminate the power of the federal judiciary to determine what the law is, as required by Article III of the United States Constitution. The AEDPA did, however, alter habeas review by mandating a strict choice-of-law rule. In comparing the state decision to clearly established federal law, it is the law "as determined by the Supreme Court of the United States" that prevails. Federal courts are no longer permitted to rely on their own jurisprudence in addition to that of the Supreme Court. Thus, Petitioner must be able to point to an authoritative decision of the Supreme Court in order to secure a writ. *See Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir.1996).

In *Green v. French,* 143 F.3d 865 (4th Cir.1998), the Fourth Circuit interpreted the meaning of "contrary to" and "unreasonable application of."

[A] decision is "contrary to" precedent only when, either through a decision of pure law or the application of law to facts indistinguishable in any material way from those on the basis of which the precedent was decided, that decision reaches a legal conclusion or a result opposite to and irreconcilable with that reached in the precedent that addresses the identical issue.

*Id.* at 870.

[A] decision represents an "unreasonable application of" precedent only when that decision applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable, when that decision fails to apply the principle of a precedent in a context where such failure is unreasonable, or when that decision recognizes the correct principle from the higher court's precedent, but unreasonably applies that principle to the facts before it (assuming the facts are insufficiently different from those that give rise to the precedent as to constitute a new context for consideration of the principle's applicability).

*Id.*

Section 2254(d)(2) dictates the standard of review applicable to claims based on pure questions of fact. When a petition for habeas relief is based on a challenge to a factual determination, before granting an application for a writ, the federal court must find that the state decision was based on an unreasonable· determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2). In addition, factual determinations made by a state court shall be presumed to be correct and Petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).[5]

█ Therefore, the proper standard of review in this case is as follows: if this Court determines on the basis of the state court record that the Virginia courts' rulings were not contrary to, or an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court, and this Court determines that the state court proceedings did not result in a decision based upon an unreasonable determination of the facts in light of the evidence presented, then Respondent is entitled to summary judgment. *See Dukes v. Hunt,* 952 F.Supp. 276, 280 (E.D.N.C.1996).

Thus, it was improper for the Magistrate Judge to view the record in the light most favorable to the non-moving party.

---

5. Section 2254(e)(1) states:

[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The use of this standard, rather than the proper standard under the AEDPA, benefitted Petitioner. Nonetheless, the Magistrate Judge found against Petitioner and denied him relief.[6] Accordingly, Respondent's objection is **SUSTAINED.**

## B. "Opt-in" Provisions

Respondent objects to the Magistrate Judge's finding that Virginia does not currently satisfy the "opt-in" provisions in Chapter 154 of the AEDPA. Respondent has previously raised this objection numerous times in other cases, and this Court has consistently ruled that Virginia does not satisfy the "opt-in" provisions of the AEDPA. *See Weeks v. Angelone*, 4 F.Supp.2d 497, 505–07 (E.D.Va.1998); *Ramdass v. Angelone*, 28 F.Supp.2d 343, 356 n. 5 (E.D.Va.1998); *Wright v. Angelone*, 944 F.Supp. 460, 468 (E.D.Va.1996); *see also Breard v. Netherland*, 949 F.Supp. 1255, 1261–62 (E.D.Va.1996); *Satcher v. Netherland*, 944 F.Supp. 1222, 1244–45 (E.D.Va.1996), *aff'd in part, rev'd in part sub nom. Satcher v. Pruett*, 126 F.3d 561 (4th Cir.1997). The Court finds no compelling reason to depart from the Magistrate Judge's ruling on this issue. Therefore, Respondent's objection is **OVERRULED.**

**6.** The Court notes that the Magistrate Judge discussed sections 2254(d) and 2254(e)(1) in his R & R. In fact, the Magistrate Judge concludes the R & R by stating that "petitioner has failed to show that the decision of the Supreme Court of Virginia on direct appeal and habeas corpus was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of facts, under 28 U.S.C. § 2254(d)." Magistrate Judge's Report and Recommendation at 107.

**7.** The Court notes that the Magistrate Judge also denied Petitioner's request for an evidentiary hearing in a November 14, 1997 order.

**8.** Petitioner has not identified any claim that requires factual development beyond the state court record. Although Petitioner fails to identify the specific issues that merit an evidentiary hearing, the Court will address Petitioner's objection.

## V. PETITIONER'S OBJECTIONS

### A. Request for Evidentiary Hearing

Petitioner objects to the Magistrate Judge's ruling that his petition should be dismissed without an evidentiary hearing.[7] Because Petitioner's claim is governed by the AEDPA, the Court must address the effect of the AEDPA on the standards controlling evidentiary hearings.[8] *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Petitioner's request for an evidentiary hearing is controlled by a combination of the AEDPA and the Supreme Court's ruling in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). *See Cardwell v. Greene*, 152 F.3d 331, 336 (4th Cir.1998). The AEDPA creates "an express limitation on the power of a federal court to grant an evidentiary hearing." *See id.* Under the AEDPA, if Petitioner failed to develop the factual basis of a claim in state court, then the Court must deny him an evidentiary hearing unless Petitioner meets one of the two narrow exceptions in § 2254(e)(2)(A) & (B). *See* 28 U.S.C. § 2254(e)(2) (1998).[9] On the other hand, if Petitioner has not "failed to develop" the facts in state court,

**9.** Section 2254(e)(2) states:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
(A) the claim relies on–
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (1998).

then this Court will consider whether an evidentiary hearing is required under *Townsend.* *See Cardwell,* 152 F.3d at 337. In short, *Townsend* delineates the circumstances in which an evidentiary hearing is mandatory. *See Townsend,* 372 U.S. at 313, 83 S.Ct. 745. The Court must begin its analysis by determining whether Petitioner has "failed to develop the factual basis of a claim in State court."

■ A petitioner fails to develop the evidence supporting a claim "only if he or she relinquishes an opportunity to introduce evidence or neglects to seek such an opportunity." *Cardwell,* 152 F.3d at 337. Petitioner admits in a footnote in his objections to the R & R that he has not failed to develop his claims in state court.[10] Nonetheless, Petitioner argues in the alternative that if he did fail to develop his claims in state court, then he is entitled to an evidentiary hearing because he is innocent of the crimes he was convicted of and he could not have previously discovered the evidence of his innocence through the exercise of due diligence. *See* Petitioner's Objections to the Magistrate Judge's Report and Recommendation at 28 n. 13.

Because Petitioner has not pled facts sufficient to support this claim, and in light of Petitioner's own admission, the Court finds that Petitioner did not relinquish an opportunity to introduce evidence nor neglect to seek such an opportunity in state court. Accordingly, the Court concludes that Petitioner did not fail to develop the facts in state court under § 2254(e)(2). Furthermore, the Court finds that Petitioner's conclusory allegations in a footnote are not sufficient to meet the requirements in § 2254(e)(2)(A) & (B). The Court must now address the standard for an evidentiary hearing as articulated in § 2254(e)(1) and *Townsend.*

■ Petitioner developed the factual basis for his claims in the state court proceedings. Therefore, as previously stated, the factual determinations made by the state court shall be presumed to be correct and Petitioner has the burden of rebutting this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner attempted to rebut this presumption by offering an unsworn affidavit of Lester C. Burket, Jr. (Petitioner's father) and a sworn affidavit from Susan L. Brown, a paralegal at the Virginia Capital Representation Resource Center. Ms. Brown states in her affidavit that Mr. Burket indicated that he believes the information in his unsworn affidavit is true, but he refused to sign it because he did not want to upset his wife. *See* Petitioner's Petition for a Writ of Habeas Corpus, Subject to Amendment at Attachment 1 (Affidavit of Susan L. Brown). Upon review of Petitioner's petition and the attached affidavits, the R & R, and the pleadings, the Court finds that Petitioner has not met his burden of rebutting the presumption of correctness of the state court's factual determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Thus, the state court's factual findings in this case are presumed to be correct. *See id.*

■ Furthermore, Petitioner is entitled to an evidentiary hearing under *Townsend* "only if the state court fact-finding process was deficient in some significant respect." *Eaton v. Angelone,* 139 F.3d 990, 994 (4th Cir.1998) (citing *Townsend,* 372 U.S. at 312–13, 83 S.Ct. 745); *see Fitzgerald v. Greene,* 150 F.3d 357, 369 (4th Cir.1998). The Supreme Court stated that a federal court has the discretion to grant an evidentiary hearing where a petitioner alleges facts " 'which, if proved, would entitle him to relief.' " *Cardwell,* 152 F.3d at 336 (quoting *Townsend,* 372 U.S. at 312, 83 S.Ct. 745). The Court finds that Petitioner has failed to allege facts entitling him to relief. Therefore, the Court declines to

---

**10.** Petitioner concedes this point when he states "even if he did fail to develop his claims in state court (which he denies)." Pe-

titioner's Objections to the Magistrate Judge's Report and Recommendation at 28 n. 13.

exercise any discretion that it has in this case to grant an evidentiary hearing.

■ Nonetheless, if a petitioner proves that he "did not receive a full and fair evidentiary hearing in a state court," then a federal evidentiary hearing is mandatory. *Townsend,* 372 U.S. at 312, 83 S.Ct. 745; *see Cardwell,* 152 F.3d at 336. The Supreme Court identified six situations where a hearing is required:

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend,* 372 U.S. at 313, 83 S.Ct. 745. Petitioner offers only conclusory allegations in support of his claim that the state court did not afford him a full and fair fact hearing. *See* Petitioner's Objections to the Magistrate Judge's Report and Recommendation at 28 ("The state court habeas corpus proceedings in this case resolved no facts at all; thus an evidentiary hearing is required in this Court."); *id.* at 28 n. 12 ("There was no fact finding process in state court with respect to the habeas corpus issues, and there were no facts found."). The Court therefore finds that Petitioner has failed to allege facts sufficient to prove the existence of one of the six circumstances listed in *Townsend.*

■ Moreover, the record unequivocally shows that Petitioner had the opportunity to fully develop the facts of this case before the state court. The state court conducted extensive proceedings on the admissibility of Petitioner's confession, the validity of his guilty plea, and his competency to stand trial. *See generally Burket*

*v. Commonwealth,* 248 Va. 596, 450 S.E.2d 124 (1994). Furthermore, whether there was a full and fair evidentiary hearing in state court does not depend upon whether Petitioner prevailed. A federal evidentiary hearing is not mandatory because Petitioner failed to prove that he did not receive a full and fair evidentiary hearing in state court and none of the six circumstances enumerated in *Townsend* exist in this case.

In short, this Court "refuse[s] to transform a federal habeas proceeding into a second trial." *Eaton,* 139 F.3d at 995. For the aforementioned reasons, Petitioner's objection is **OVERRULED.**

**B. Summary Judgment**

Petitioner objects to the Magistrate Judge's recommendation to grant summary judgment in favor of Respondent. Specifically, Petitioner argues that summary judgment is inappropriate because the facts in this case are in "great dispute" and "there are innumerable genuine issues as to material facts." *See* Petitioner's Objections to the Magistrate Judge's Report and Recommendation at 30.

Petitioner's objection is erroneous for two reasons. First, under § 2254(e)(1), the factual determinations made by the state court shall be presumed to be correct and Petitioner has the burden of rebutting this presumption by clear and convincing evidence. As previously stated, the Court found that Petitioner did not meet his burden under § 2254(e)(1). Second, Petitioner misstates the standard for summary judgment in this case. The Court previously concluded that the proper standard of review in this case is governed by the AEDPA, and that the Magistrate Judge applied a standard under Rule 56(c) that was more beneficial to Petitioner. However, viewed under the AEDPA standard, the Court finds that summary judgment is appropriate. The Court agrees with the Magistrate Judge's recommendation that Respondent's motion for summary judg-

ment be granted. Petitioner's objection is accordingly **OVERRULED.**

### C. The Magistrate Judge's Reliance on the State Court's Judgment

Petitioner objects to the Magistrate Judge's reliance on the Virginia Supreme Court's judgment in this case. Specifically, Petitioner objects to the Magistrate Judge's recommendation "that relief be denied because the state court [1] denied relief on certain claims on the basis of the state court decision in *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885 (1981), and [2] denied other claims on the merits by writing 'no merit.'" *See* Petitioner's Objections to the Magistrate Judge's Report and Recommendation at 31. Petitioner argues that the use of *Anderson* is contrary to United States Supreme Court law, and that the Virginia Supreme Court's judgment is not an adjudication on the merits.

#### 1. Reliance on *Anderson*

The Virginia Supreme court held that Petitioner's state claims I, II, and III [11] were procedurally barred under *Anderson v. Warden,* 222 Va. 511, 281 S.E.2d 885 (1981), which prevents a state habeas petitioner from presenting a set of facts that is directly contrary to his earlier statements made in court without a valid reason why he should be permitted to controvert such prior statements. *See id.* at 516, 281 S.E.2d 885. Petitioner argues that the state court's dismissal of some of Petitioner's claims under *Anderson* is a "denial of

relief on the merits of the claim" and that this ruling "is entitled to no respect in this court under 2254(d)." [12] *See id.* at 31–32.

■ The Fourth Circuit has clearly held that the rule stated in *Anderson* is a valid procedural rule. *See Dubois v. Greene,* 149 F.3d 1168, 1998 WL 276282, at *5 (4th Cir.1998) (unpublished). Thus, the dismissal of Petitioner's claims under *Anderson* is not a denial on the merits of such claims, and, as a result, Petitioner's reliance on § 2254(d) is misplaced. Consequently, these defaulted claims are precluded from federal habeas review unless Petitioner can establish the "cause" and "actual prejudice" necessary to excuse these procedural defaults. *See Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Mu'min v. Pruett,* 125 F.3d 192, 198–200 (4th Cir. 1997).

The Supreme Court has clearly stated that attorney error short of ineffective assistance of counsel does not constitute cause for failure to raise an issue prior to habeas review.[13] *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also United States v. Breckenridge,* 93 F.3d 132, 134 n. 1 (4th Cir.1996). The Magistrate Judge found Petitioner's ineffective assistance of counsel claims to be without merit. The Court has reviewed these findings and agrees with the Magistrate Judge's recommendation denying Petitioner's ineffective assistance of counsel claims. Therefore, Petitioner has not met his burden of proving

---

**11.** These claims are the same as Petitioner's federal claims I, II, and III as listed in Part II of this opinion.

**12.** Petitioner also argues that the holding in *Anderson* is contrary to *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The Fourth Circuit previously rejected this very argument in stating that "we are not persuaded by petitioner's argument that the rule of Anderson was overruled by United States v.

Cronic ... and Strickland v. Washington." *Dubois v. Greene,* 149 F.3d 1168, 1998 WL 276282, at *5–*6 n. 1 (4th Cir.1998) (unpublished). "To the extent that Strickland and Cronic define the substantive standards for reviewing ineffective assistance of counsel claims under the Sixth Amendment, they do not foreclose Virginia from enforcing a procedural rule such as Anderson." *Id.* Thus, Petitioner's claim is without merit.

**13.** The Court notes that Petitioner has not offered any evidence of "cause" or "actual prejudice" in his objections to the R & R.

"cause" for his double procedural default. Because Petitioner did not satisfy the first prong of the "cause and actual prejudice" test, the Court need not address whether there was "actual prejudice" resulting from the errors of which he complains.

The Court finds that Petitioner's state claims I, II, and III were procedurally defaulted, and that Petitioner has failed to prove "cause" and "actual prejudice." Therefore, federal habeas review of these claims is precluded, and Petitioner's objection is **OVERRULED.**

### 2. Adjudication on the Merits

Petitioner argues that the Virginia Supreme Court's ruling on his state habeas petition was not an adjudication on the merits within the meaning of § 2254(d).[14] Specifically, Petitioner asserts that the state court's ruling is insufficient because the court dismissed some of Petitioner's claims by merely stating that they had "no merit." [15]

A state court decision must satisfy four prerequisites in order to qualify under § 2254(d). There must be: (1) a state court adjudication, (2) on the merits, (3) in formal state court proceedings, and (4) the adjudication must have resulted in a decision. *See* 28 U.S.C. § 2254(d); *McLee v. Angelone,* 967 F.Supp. 152, 156 (E.D.Va.1997); *Parker v. Angelone,* 959 F.Supp. 319, 322 (E.D.Va.1997). Contrary to Petitioner's argument, a state court decision that summarily dismisses a petitioner's claim as meritless is an adjudication on the merits within the meaning of § 2254(d). *See Cardwell v. Greene,* 152 F.3d 331, 339 (4th Cir.1998); *Wright v.*

*Angelone,* 151 F.3d 151, 156–57; *McLee,* 967 F.Supp. at 157 (holding § 2254(d) does not require an explanatory decision from the state court); *Parker,* 959 F.Supp. at 320 (decision by state court summarily dismissing petitioner's claim as "frivolous" is an "adjudication on the merits"). Consequently, Petitioner's federal habeas petition can only be granted if the Virginia Supreme Court's adjudication "(1) resulted in a decision that was contrary to ... clearly established Federal law ... or (2) resulted in an decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

Petitioner argues under *Cardwell* that this Court must perform an independent review of the applicable law in determining whether to grant the petition. *See Cardwell,* 152 F.3d at 339; *see also Wright,* 151 F.3d at 157. The Court performed an independent review of the applicable law and the facts in two respects. First, the Magistrate Judge conducted his own independent review of the applicable law and the facts, and he concluded that the decision of the Supreme Court of Virginia was not contrary to, or an unreasonable application of, Federal law, or an unreasonable determination of the facts under § 2254(d). *See* Magistrate Judge's Report and Recommendation at 107. Second, this Court revisited all of the Magistrate Judge's findings in his Report and Recommendation. As a result, the Court finds that the Magistrate Judge's rulings were correct, and the Court adopts them as a matter of law. Accordingly, Petitioner's objection is **OVERRULED.**[16]

---

14. Petitioner reiterates the claim that he is entitled to an evidentiary hearing in the text of his argument that the state court's judgment was not an adjudication on the merits. As previously stated, Petitioner is not entitled to an evidentiary hearing. Thus, this argument is without merit.

15. The Court notes that the entire opinion of the Virginia Supreme Court is one paragraph.

16. Petitioner argues in a footnote that § 2254(d) prohibits the Court from interpreting and applying the Constitution in a *de novo* manner, and thus, this statute is unconstitutional because it violates Article III. *See* Petitioner's Objections to the Magistrate Judge's Report and Recommendation at 40 n. 22. Petitioner provides no support for this argument. Furthermore, the Court finds no merit in Petitioner's claim.

## VI. CONCLUSION

The Court, having examined the objections to the Magistrate Judge's Report and Recommendation, and having reviewed the record and conducted a *de novo* review of those portions objected to, does hereby order that the petition be **DENIED** and that Respondent's motion for summary judgment be **GRANTED.**

Petitioner is **ADVISED** that he may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, U.S. Courthouse. 600 Granby Street, Norfolk, Virginia, 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.

The Clerk is **DIRECTED** to send a copy of this order to counsel for Petitioner and to counsel for Respondent.

**IT IS SO ORDERED.**